STEPHEN AUSTIN, JEREMIAH WADSWORTH and JOHN CHURCH *against* MATTHIAS SLOUGH.

If the payee of a note pay the balance thereof to an indorsee, under a judgment against him, after the bankruptcy of the maker and after such indorsee has procured his dividends from the assignees, by the direction of the payee, he shall not recover against the maker who has obtained his certificate.

THIS cause came on again to be tried by a special jury. The facts turned out as at the last term; excepting that it was shown in evidence that the ton of iron was received by the plaintiff from the defendant; and it was insisted, that the date of the entry of the credit on the note was mistaken, being made on the 2d December 1785 and not in 1786.

The arguments of the counsel on both sides were much the same as in the former trial, and the same authorities were produced. The plaintiff's counsel also cited Haddon *v.* Chambers, determined last term, on a case stated from Huntingdon county.

To this it was answered, that it was the case of a security, which depended on different grounds from the present suit, and the bond there did not become due, until the defendant was discharged

under the insolvent laws of Maryland, and consequently, as between the surety and principal, there was no subsisting debt due before the bankruptcy.

The court declared their opinion, that the doctrine contended for by the plaintiffs, would effectually defeat the intention of the legislature by the bankrupt law. The preamble of that act considers unfortunate merchants no longer in the light of criminals. When they have fully and honestly conformed to the provisions of the law, their persons and future property were intended to be guarded against the demands of their creditors, for all debts due before their bankruptcy. No considerable trade can possibly be carried on, without making use of bills of exchange and promissory notes. And should the plaintiff's construction prevail, the bankrupt law would not serve as a shield for the unfortunate merchants.

M'Kean, C. J. added; whether the present action will lie for money laid out and expended, I will not now determine; but I have very serious doubts on that point, and I believe the plaintiff's counsel would be at a loss to find such a precedent. The case of Howis v. Wiggins in 1792, is not fully stated in 4 Term Rep. 714. The nature of the suit brought does not appear thereby, or when the promissory notes became due. If they were not payable until after Wiggin's bankruptcy, the suit would certainly be maintainable on them.

If the plaintiffs had commenced an action as payees, it would clearly appear, that every farthing had been received, which could have been procured from the defendant's assignees. It will not be contended, that Read and Forde could have recovered against the defendant on the note after his bankruptcy, and it will be difficult to say, that by delivery of the note to the plaintiff, they could give them a new right of action.

It is not easy to point out the distinction between the cases of Howis v. Wiggins, and ex parte Maydwell and Brymer therein cited, and more fully reported in Cook's Bkt. Law 204, 211 (2d edit.) In the latter case, the notes were not in the plaintiff's hands at the time of the bankruptcy; but even in the former case, it does not appear that any dividends had been received from the bankrupt's estate, by the holders of the notes, under the plaintiff's direction, and in fact as their agents. It differs therefore very materially from the case now before us.

The jury agreed without leaving the bar; but the plaintiffs would not take their verdict, but became nonsuit.